IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

K&L TRAILER LEASING, INC.

    Debtor

GREENEVILLE FEDERAL BANK, FSB

    Plaintiff

    v.

KRIS FELLHOELTER; FIRST BANK;
JB&B CAPITAL, LLC; FIRST MIDWEST
FINANCE; SERVISFIRST BANK;
GARY M. MURPHEY, TRUSTEE;
MARVIN FELLHOELTER

    Defendants

Case No. 3:20-bk-31620-SHB
Chapter 11

Adv. Proc. No. 3:20-ap-3054-SHB

**MEMORANDUM ON MOTION OF GARY M. MURPHEY, TRUSTEE,
FOR JUDGMENT ON THE PLEADINGS**

APPEARANCES:    LAUGHLIN, NUNNALLY, HOOD & CRUM, PC
                      Jerry W. Laughlin, Esq.
                      100 South Main Street
                      Greeneville, Tennessee  37743
                      Attorneys for Plaintiff

                      BRADLEY ARANT BOULT CUMMINGS LLP
                      William L. Norton, III, Esq.
                      1600 Division Street
                      Suite 700
                      Nashville, Tennessee  37203
                      Attorneys for Defendant Gary L. Murphey, Trustee

WINCHESTER, SELLERS, FOSTER & STEELE, PC
Anthony R. Steele, Esq.
800 S. Gay Street
Suite 1000
Knoxville, Tennessee 37901
Attorneys for Defendant FirstBank

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff, Greeneville Federal Bank ("GFB"), initiated this adversary proceeding on December 7, 2020, and filed the Amended Complaint for Adjudication of the Priority of the Security Interest of Greeneville Federal Bank in Certain Trailers and Lease and Sales Proceeds Therefrom ("Complaint") on December 23, 2020. [Docs. 1, 17.]  GFB seeks a declaratory judgment that it possesses a first-priority security interest in certain trailers previously held as inventory of GFB's debtor, K&L Sales & Leasing, Inc. ("Sales"), notwithstanding Sales' transfer of the trailer-inventory to (1) K&L Trailer Leasing, Inc. ("Leasing"), Debtor in the underlying Chapter 11 case in which Defendant Gary M. Murphey was appointed the Chapter 11 trustee (the "Trustee"); (2) Kris Fellhoelter ("Kris"), who is the sole owner of Sales and 50% owner of Leasing; and (3) Kris's father, Marvin Fellhoelter ("Marvin"), who with Linda Fellhoelter[1] (Kris's mother), owns the remaining 50% of Leasing.  The other defendants herein are the creditors of Leasing or other transferees of Sales' trailer-inventory who assert a security interest in the transferred inventory and have filed claims in Leasing's Chapter 11 case.

Pending before the Court is the Motion of Gary M. Murphey, Trustee, for Judgment on the Pleadings (the "Motion"), filed on February 1, 2021, with a brief in support [Docs. 25, 26], to which GFB responded [Doc. 29], with the Trustee filing a Court-authorized reply [Doc. 37]. Defendant FirstBank also filed a Reply of FirstBank in Support of Trustee's Motion for Judgment on the Pleadings [Doc. 39], to which GFB replied with Court permission on April 20, 2021 [Doc. 43].  Also with Court permission, the Trustee filed a final reply to GFB's April 20 reply. [Doc. 45.]  The Motion is now ripe for adjudication.

---

[1] Notwithstanding that Linda Fellhoelter is referenced at ¶ 10 of the Complaint [Doc. 17] as collectively owning 50% of Leasing with her husband, Marvin Fellhoelter, and that Plaintiff's counsel included "Marvin & Linda Fellhoelter" in the docket text for the initial complaint [*see* docket text entry for Doc. 1], Linda Fellhoelter was not identified in the case caption, and no summons was issued for her.  Thus, Linda Fellhoelter is not a party to this adversary proceeding.

Because GFB has properly pleaded that under Tennessee law, it retains a first-priority security interest in collateral initially held as inventory by Sales based on allegations that Sales transferred GFB's collateral to Leasing and others out of the ordinary course, the Motion will be denied.

## I. ALLEGATIONS OF THE COMPLAINT

GFB's Complaint seeks an adjudication of the following:

[1] the priority of the lien of [GFB] in certain of those trailers or the proceeds from the sale or lease thereof, as well as the proceeds obtained by the Trustee from those particular trailers in th[e Court-authorized sale of the assets of Leasing to JPM Financial (the 'Sale')[2]] only, or the lease of those particular trailers, and does not address the proceeds of the sale of trailers by the Trustee prior to the Sale [and]

[2] the priority of [GFB's] security interest in particular trailers and the proceeds from the Sale . . . , or the lease thereof, over any claim of the Trustee pursuant to 11 U.S.C. § 544(a)(1), as well as all claims, or claims of ownership thereof, asserted by the other Defendants.

[Doc. 17 at ¶¶ 4-5.]

GFB pleaded the following facts.[3]  Sales granted GFB a security interest in all assets in connection with an October 1, 2010 loan in the amount of $2.5 million. [Doc. 17, at ¶ 7.]  GFB perfected its security interest by the filing of a UCC-1 with the Tennessee Secretary of State, which UCC-1 was continued by amendment filed on October 1, 2015. [*Id.*]  At all pertinent times, Sales was engaged in the sale of "big rig trailers" so that GFB's filing of the UCC-1 perfected its blanket inventory lien on all used trailers owned by Sales. [*Id.* at ¶ 8.]

---

[2] The Sale was approved by the Court in the Order (A) Approving Sale of Debtor's Assets Free and Clear of all Liens, (B) Authorizing Assumption of Executory Contracts. *In re K&L Trailer Leasing, Inc.*, No. 3:20-bk-31620-SHB (Bankr. E.D. Tenn. Oct. 23, 2020), ECF No. 210.

[3] Under Federal Rule of Civil Procedure 12(c), made applicable here by Federal Rule of Bankruptcy Procedure 7012, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all of the complaint's factual allegations as true, and determine[s] whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).  Thus, the Court recites herein GFB's allegations as if they are true.

In addition to being the sole owner of Sales and 50% owner of Leasing, Kris also is president of both entities. [*Id.* at ¶ 9.] Marvin and Linda are officers and members of the board of Leasing, and they also were active employees of both entities. [*Id.* at ¶ 10.] Sales and Leasing share other officers and employees, some of whose salaries were paid by Sales. [*Id.* at ¶ 11.] Kris, Marvin, and through them, Leasing were "fully aware of the terms of the security interest of [GFB] in all trailers of . . . Sales and the obligation of . . . Sales" to GFB, including the duty to pay GFB when any used trailer was transferred by Sales, after which GFB would release its security interest in the transferred trailer. [*Id.* at ¶ 12.]

Leasing was in the business of leasing to third parties the trailers acquired primarily either by purchase from Sales or by lease from Kris and Marvin. [*Id.* at ¶ 3, 13.] The trailers that Kris and Marvin leased to Leasing also had been acquired primarily from Sales. [*Id.*] The transfers of trailers from Sales to Leasing "ordinarily occurred only after [Leasing] had a potential third party willing to lease that trailer." [*Id.* at ¶ 15.] In the three years before Sales and Leasing filed for bankruptcy protection, notwithstanding that the companies' chief financial officer ("CFO") generally was responsible for maintaining the records of both companies, Kris had insisted on personally entering transactions between the two companies on the companies' records. [*Id.* at ¶ 14.]

During May 2020, the month before Sales and Leasing filed their bankruptcy petitions, Sales transferred trailers that were subject to GFB's inventory lien to Kris and Marvin at a rate that was more than twenty times the historical average monthly volume of such transfers, with such transfers in May 2020 exceeding $2 million in value. [*Id.* at ¶ 16.] Transfers by Sales to Leasing, Kris, and Marvin in June (at the end of which the bankruptcy petitions were filed) also far exceeded the previous monthly average for such transfers. [*Id.* at ¶ 17.] Sales' records for

"virtually all of the transfers" from Sales to Leasing or Marvin reflect that Kris was the salesperson. [*Id.* at ¶ 18.] For many of the trailers transferred from Sales to Leasing, Kris, and Marvin in May and June of 2020, the CFO "could find no evidence of any funding." [*Id.* at ¶ 19.]

GFB asserts in the Complaint the legal conclusion that transfers from Sales to Leasing or any other transferee for which Sales did not receive payment of the purchase price were not transfers to a buyer in the ordinary course of business as defined in Tennessee Code Annotated section 47-1-201(9) so that such transfers remained subject to the first-priority inventory lien of GFB under Tennessee Code Annotated section 47-9-320. [*Id.* at ¶ 20.] GFB also asserts that Leasing is imputed with knowledge of GFB's continuing inventory lien because Kris, as an owner of and the president of both Sales and Leasing, was fully aware of Sales' obligations to GFB. [*Id.* at ¶ 22.] GFB also asserts that Kris and Marvin took ownership of trailers from Sales subject to GFB's inventory lien because neither Kris nor Marvin were buyers in the ordinary course of business. [*Id.* at ¶ 23.]

Leasing, Marvin, and Kris pledged to lenders that are defendants herein some of the trailers transferred to them by Sales, with Kris signing the certificates of title for the transferred trailers on behalf of Sales, after which those lenders noted their liens on the titles. [*Id.* at ¶ 24.] Because Kris signed the titles to transfer ownership from Sales, the lenders "knew or should have known that the transferee was not a 'buyer in the ordinary course of business,'" which knowledge created a duty in the lenders to ensure that GFB's lien was released. [*Id.*] As a result, GFB concludes that such lenders' security interests are junior to GFB's continuing perfected lien on the inventory of Sales. [*Id.*]

In sum, GFB seeks a judgment declaring that its blanket inventory lien continued in the trailers that were transferred by Sales to Leasing, Kris, or Marvin outside of the ordinary course

of the business of Sales and that GFB is entitled to all proceeds (whether from the Sale or from any other sale or lease) arising out of trailers that were transferred by Sales to Leasing, Kris, or Marvin out of the ordinary course. [*Id.* at ¶¶ A-D.]

## II. RULE 12(c) STANDARD

Courts apply the same standard for Rule 12(c) motions as for Rule 12(b)(6) motions, which are granted only when the court finds, after taking as true "all well-pleaded material allegations of the pleadings of the opposing party . . . , [that] 'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Jackson v. Prof'l Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Those allegations that are well-pleaded, when taken together, must "give notice to the defendant as to what claims are alleged" and must contain "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Nevertheless, detailed factual allegations are not necessary. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). "Plausibility" exists so long as the "'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 609 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

*In re Prebul Jeep, Inc.*, No. 09-10838, 2010 WL 3304608, at *3 (Bankr. E.D. Tenn. Aug. 20, 2010).

Under this standard, if GFB's allegations taken as true would result in a legal conclusion that the transfer of inventory of Sales to Leasing, Marvin, or Kris out of the ordinary course was subject to GFB's continuing lien and that bankruptcy law does not permit the Trustee to avoid such a lien on property of the estate, then the Trustee's Motion must be denied.

## II. THE PARTIES' POSITIONS

The Trustee argues that GFB's perfected security interest was interrupted when Sales transferred its inventory to Leasing because Leasing was not in the business of selling trailers but was in the business of leasing trailers. [Doc. 26 at p. 2.] As such, so the Trustee asserts, GFB's security interest became subject to the certificate-of-title statute once Sales' inventory became the leasing inventory of Leasing. [*Id.* at pp. 2-3.] The Trustee then argues that his strong-arm powers under 11 U.S.C. § 544 allow him to overcome GFB's "secret lien in Leasing-owned assets" because a hypothetical judgment-lien creditor would have been unable to discover the existence of GFB's claimed lien. [*Id.* at pp. 4-5.] Finally, the Trustee asserts that the knowledge of Kris and Marvin does not affect the Trustee's strong-arm powers. [*Id.* at p. 5.]

FirstBank argues that when Sales transferred its inventory to Leasing, GFB's security interest in the trailers was no longer governed by the provisions of the Uniform Commercial Code ("UCC") as adopted in Tennessee but by Tennessee's law concerning certificates of title found in title 55 of the Tennessee Code Annotated. [Doc. 39 at pp. 2-5.] Thus, FirstBank posits, GFB became subordinated to the creditors of Leasing that noted their liens on the certificates of title for the trailers that previously were subject to GFB's inventory lien while they were held as inventory of Sales: "the security interest of [GFB] in the inventory of goods covered by a certificate of title does NOT continue in the goods and enjoy priority when such goods are no longer held in inventory by a person who created the security interest in such goods." [*Id.* at p.

3.]

GFB, on the other hand, argues that it complied with Tennessee law by perfecting its interest in the inventory of Sales in the required manner – by filing a UCC-1 financing statement with the Tennessee Secretary of State – and that its perfected security interest continued in the trailer-inventory in the hands of the transferees who took outside of the ordinary course as defined by Tennessee law. GFB argues that its first-priority lien is not defeated by any exception to the rule that a perfected security interest continues when collateral is transferred because neither Leasing, Kris, nor Marvin were "buyer[s] in the ordinary course of business" of GFB's collateral held by Sales as inventory. [Docs. 29, 43.]

### III. ANALYSIS

A. GFB has sufficiently pleaded that the transfers from Sales were in violation of GFB's properly perfected security interest in inventory and that the transferees were not buyers in the ordinary course under Tennessee law.

Simply, the Trustee and FirstBank misread the provisions of the UCC as adopted in Tennessee. The Court finds no ambiguity in the law and reads it to provide clearly that GFB's perfected security interest in the inventory of Sales continued in any trailer that was transferred by Sales outside of the ordinary course or without GFB's permission.

Under Tennessee law, GFB's only method of perfecting its lien on the inventory of Sales was by the filing of a financing statement. *See* Tenn. Code Ann. § 47-9-311(d) (providing that when collateral that is governed by a certificate-of-title statute is inventory held for sale or lease by a person who is in the business of selling goods of that kind, the requirements of the certificate-of-title statute do not apply). Indeed, comment 4 to section 47-9-311 explains that "[c]ompliance with the certificate-of-title statute is both unnecessary and ineffective to perfect a security interest in inventory to which this subsection applies." Tenn. Code Ann. § 47-9-311

cmt. 4. Thus, GFB's security interest in the trailer-inventory of Sales was continuously perfected from the date that GFB filed the UCC-1.

Section 47-9-315(a) points to three exceptions to the general rule that a secured creditor's interest in collateral continues "notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest." First, if chapter 9 of title 47 provides some exception to the general rule, then a perfected security interest will not continue in collateral disposed of by a debtor. Tenn. Code Ann. § 47-9-315(a). Second, if a secured party entrusts goods subject to the creditor's security interest to a merchant who deals in goods of that kind, the merchant has the power to transfer all rights of the creditor "to a buyer in the ordinary course of business." Tenn. Code Ann. § 47-2-403(2), *cited in* Tenn. Code Ann. § 47-9-315(a). Third, if a secured party authorizes the disposition of its collateral free of the security interest, then that disposition terminates the security interest in that collateral. Tenn. Code Ann. § 47-9-311(a)(1).

Notwithstanding the Trustee's and FirstBank's argument that Sales' transfer of GFB's collateral to Leasing stripped GFB's inventory lien under the provisions of section 47-9-311(a)(2)(A) and (d) because the collateral was no longer held as inventory by GFB's debtor, no Court has so held under similar circumstances. Indeed, such a holding would swallow the general rule carefully constructed by the authors of the UCC.

The Trustee argues that because Leasing held the trailers it received from Sales for lease and not for sale, Leasing was not in the "business of selling goods of that kind" under section 47-9-311(d) so that GFB's perfected UCC-1 lien became ineffective. [Doc. 26 at pp. 2-4.] The law, however, focuses on the character of the collateral in the hands of the secured party's debtor and obligor – i.e., Sales – and not on the character of the collateral in the hands of a transferee – i.e.,

Leasing. To be sure, Tennessee's version of UCC article 9 provides that a secured party must take certain actions to continue its perfected status on relocation of collateral or of the debtor to another jurisdiction (Tenn. Code Ann. § 47-9-316); on a change in the debtor's name that would render a financing statement seriously misleading (Tenn. Code Ann. § 47-9-507(c)); or when a debtor changes use[4] of collateral from a type that requires perfection by filing a financing statement to a type that requires perfection in some other way, or vice versa (*see, e.g.,* Tenn. Code Ann. § 47-9-311(d) & comment 4 ("The filing and other perfection provisions of this Article apply to goods subject to a certificate-of-title only 'during any period in which collateral is inventory held for sale or lease or leased.' If the debtor takes goods of this kind out of inventory and uses them, say, as equipment, a filed financing statement would not remain effective to perfect a security interest.")). None of those situations apply here to strip GFB of its perfection in the inventory of Sales when Sales transferred that inventory to Leasing.

Comment 3 to section 47-9-507 explains that a financing statement remains effective following the disposition of collateral even though "the collateral may be owned by a person other than the debtor against whom the financing statement was filed." Tenn. Code Ann. § 47-9-507 cmt. 3. The continued perfection on disposition of collateral means that "any person seeking to determine whether a debtor owns collateral free of security interests must inquire as to the debtor's source of title and, if circumstances seem to require it, search in the name of a former owner." *Id.* Here, the result is that any creditor of Leasing (or any other transferee) that wanted to ensure a first-priority lien on the trailers offered by Leasing as collateral could have inquired

---

[4] The Trustee and FirstBank misunderstand this provision, arguing that it applies to a transfer or disposition of collateral from the debtor (here, Sales) to a transferee (here, Leasing). The effect of section 47-9-311(d), however, applies only to the *debtor's change in use* of collateral so that perfection in a different office is required. Here, Sales did not take GFB's collateral that was used and perfected as inventory and change its use to equipment or some other type of collateral; Sales transferred GFB's inventory-collateral to Leasing, which constitutes a disposition governed by section 47-9-507(a).

about Leasing's source of title. Had such would-be creditor of Leasing inquired into how Leasing came into ownership of the trailers, the creditor would have discovered that the trailers were transferred from Sales. That knowledge would then have led the creditor to search the UCC filing office in Tennessee for liens against Sales' inventory, only to discover the inventory lien of GFB. The discovery of GFB's lien against Sales' inventory then would have led to an inquiry into whether the transfer by Sales to Leasing was either (a) approved by GFB or (b) a sale in the ordinary course under section 47-2-403(2) because those are the only two ways that GFB's perfected security interest in the inventory of Sales could have been lost by Sales' transfer to Leasing of the inventory on which GFB had a perfected security interest. *See* Tenn. Code Ann. §§ 47-9-315(a); 47-9-320(a); 47-9-507(a); *see also Inland Bank & Tr. v. ARG Int'l AG*, No. 16-CV-9964 (LAK)(SN), 2018 WL 3543905, at *3 (S.D.N.Y. May 3, 2018) (describing the two exceptions to the general rule that a security interest continues in collateral under UCC section 9-315(a)).

As to the express exception under section 47-9-315(a)(1) when a secured party authorizes the disposition of inventory on which it has a security interest, GFB has alleged that it did not authorize the transfer of its collateral from Sales to Leasing. [Doc. 17 at ¶ 12 (asserting "the obligation of [Sales] to make payment to [GFB] in order to obtain a release of [GFB]'s security in any used trailer transferred by [Sales]"). Concerning the other express exception of sections 47-9-315(a) and 47-9-320(a), GFB clearly has alleged that Leasing was not a buyer in the ordinary course under Tennessee law.

Section 47-2-403(2), which is an express exception to article 9's protection of a secured party on disposition of collateral by continuation of a perfected security interest in transferred collateral, provides that "[a]ny entrusting of possession of goods to a merchant who deals in

goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." Tenn. Code Ann. § 47-2-403(2). Section 47-9-320(a) also provides that "a buyer in the ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." Tenn. Code Ann. § 47-9-320(a). Title 47, article 1 defines "buyer in ordinary course of business" as:

> a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.

Tenn. Code. Ann. § 47-1-201(9).

Courts "have declined to find that the purported removal of goods from a retailer's inventory via 'sham sales' defeat[s] a lender's secured claims against the goods as inventory." *Auto. Fin. Corp. v. DZ Motors, LLC*, No. 16-7955 (MAS) (DEA), 2021 WL 1380605, at *10 (D.N.J. Apr. 9, 2021) (citing *Homes Sav. Ass'n v. Gen. Elec. Credit Corp.*, 708 P.2d 280, 286 (Nev. 1985) (noting that when a "sham sale" occurs, there is no "buyer" at all, much less in the ordinary course)); *see also Ford Motor Credit Co. v. First Nat'l Bank of Crossett*, 500 S.W.3d 188 (Ark. Ct. App. 2016) (finding, in a dispute between a dealership's perfected floor-plan creditor and the financer of the dealership's owner's "purchase" of two vehicles from the dealership's inventory, that summary judgment was inappropriate because material facts remained regarding whether the dealership's owner was a buyer in the ordinary course and whether the floor-plan creditor had authorized the sale of the vehicles); *Hockensmith v. Fifth Third Bank*, No. 1:11-cv-173, 2012 WL 5969654 (S.D. Ohio Nov. 29, 2012) (applying Ohio's version of the UCC to deny summary judgment based on issues of fact concerning whether cars

were held as inventory subject to a security interest of the seller and whether the transfer of such cars were to a buyer in the ordinary course).

Because GFB unquestionably has pleaded that Leasing was not a buyer in the ordinary course of business and that GFB did not authorize the transfers to Leasing, the Trustee's Motion must be denied.

> B.  GFB's prior perfected interest in the inventory of Sales is not defeated by the Trustee's strong-arm powers under 11 U.S.C. § 544(a)(3).

The Trustee also argues that 11 U.S.C. § 544 "operates without regard to actual knowledge" to prevent him from being treated as a bona fide purchaser notwithstanding the alleged knowledge and alleged bad faith of Leasing as transferee of GFB's collateral. [Doc. 26 at p. 5.] Again, the Trustee is mistaken.

Section 544 provides in relevant part:[5]

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . .

11 U.S.C. § 544(a).

Section 544(a)(1) grants to trustees the rights of a hypothetical judgment-lien creditor, and § 544(a)(2) grants to trustees the rights of a hypothetical unsatisfied execution creditor. *Lim*

---

[5] Because the property at issue is personalty, not realty, subsection (a)(3) does not apply. 11 U.S.C. § 544(a)(3); *see Nickless v. Reid (In re Reid)*, 435 B.R. 810, 813 (Bankr. D. Mass. 2010).

*v. Combs (In re Combs)*, 626 B.R. 300, 303 (Bankr. E.D. Mich. 2021). A "hypothetical lien [or execution] creditor would have priority over an unperfected secured creditor under Tennessee law," *In re Mikes*, No. 1:17-bk-14836-SDR, 2018 WL 7016626, at *2 (Bankr. E.D. Tenn. Feb. 28, 2018) (citing Tenn. Code Ann. §§ 47-9-310(a), 47-9-317(a)(2)); *see also Mostoller v. Citicapital Commercial Corp. Successor-in-Interest to Assocs. Commercial Corp. (In re Stetson & Assocs., Inc.)*, 330 B.R. 613, 623 (Bankr. E.D. Tenn. 2005) (explaining that a trustee's rights and powers are established as of the date of the petition but are defined under state law).

Here, under Tennessee law as discussed above, unless the trailers at issue were transferred by Sales to Leasing as a buyer in the ordinary course or with GFB's permission, GFB's perfected security interest in those trailers continued in the hands of Leasing, and nothing about § 544(a)(1) or (2) allows the Trustee to overcome GFB's prior perfected security interest. *See In re Reid*, 435 B.R. at 813 (rejecting the trustee's assertion under any section of § 544(a) because state law provided "for the continuation of a creditor's security interest upon a transfer of collateral [to the Chapter 7 debtor] and § 9-507(a) continue[d] the efficacy of the secured creditor's financing statement in such a situation"); *cf. In re Stetson & Assocs., Inc.*, 330 B.R. at 624 & n.11 (citing Tenn. Code Ann. § 47-9-317(a)(2)(A) ("A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before . . . the security interest . . . is perfected . . . .")).

### IV.  CONCLUSION

Because GFB has pleaded sufficient facts to establish its priority security interest in the trailers that were its inventory-collateral under Tennessee law, the Motion is denied. A separate order will enter.

FILED: May 19, 2021

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE